Patrick MILLER *v.* TRANSAMERICA COMMERCIAL
FINANCE CORPORATION

Ca 00-1465 47 S.W.3d 288

Court of Appeals of Arkansas
Division IV
Opinion delivered June 20, 2001

Samuel A. Perroni and Patrick R. James, for appellant.

Buzbee & Hawk, PLC, by: J. R. Buzbee, for appellee.

JOHN MAUZY PITTMAN, Judge. Appellant Patrick Miller appeals from the trial court's denial of his motion to set aside a default judgment. He makes several arguments, none of which have merit. We therefore affirm.

Patrick Miller was president and a shareholder of Diamond Lakes Marine, Inc. Diamond Lakes was engaged in the business of selling boats and other marine equipment in Garland County. Its inventory financing was provided by appellee Transamerica Commercial Finance Corporation by virtue of a 1997 inventory security agreement. The agreement provided that appellee would advance money to Diamond Lakes to acquire inventory and that Diamond Lakes would grant appellee a security interest in the inventory and other items.

On the same day that the corporation executed the inventory security agreement, appellant and his wife, Terri Miller, executed a guaranty contract that permitted appellee to proceed against them should Diamond Lakes default on its obligations. Such a default occurred in 1999, causing appellee to file suit against the Millers, Diamond Lakes, and another marine dealer, North Malvern Marine. The complaint sought repossession of collateral from Diamond Lakes and North Malvern Marine and judgment for $2,809,907.33 against the Millers on their guaranty agreement. As

an exhibit to the complaint, appellee appended an exhibit labeled "Outstandings," consisting of approximately 450 inventory items totaling over $2.6 million in value. Appellee also filed, contemporaneously with the complaint, the affidavit of its regional manager Bryan Alsobrooks, the person responsible for the Diamond Lakes account. Alsobrooks stated that Diamond Lakes was in default in the amount of $2,809,907.33, and was in possession of collateral believed to have a value of $2,607.881.52.

Within ten days of the lawsuit being filed, Diamond Lakes filed for bankruptcy. The Millers never answered the complaint. As a result, a default judgment was entered against them on July 26, 1999, for $2,701,708.72 (certain credits were allowed). On September 16, 1999, Patrick Miller moved to set aside the default judgment. The trial court refused to do so, and Miller appeals from that ruling.[1]

■ When a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Rules of Civil Procedure, a default judgment may be entered against him. *See* Ark. R. Civ. P. 55(a). Default judgments are not favorites of the law and should be avoided when possible. *B&F Engineering v. Cotroneo*, 309 Ark. 175, 830 S.W.2d 835 (1992). When a trial judge denies a motion to set aside a default judgment, we must determine on appeal whether the trial judge abused his discretion. *See id.*

■ Appellant argues first that the default judgment entered against him is void because appellee failed to serve him with the summons and complaint. He bases his argument on an affidavit in which he stated that he had no recollection of being served and did not believe he was personally served. Default judgments rendered without proper service are judgments rendered without jurisdiction, and are therefore void. *See Lawson v. Edmondson*, 302 Ark. 46, 786 S.W.2d 823 (1990); *Wilburn v. Keenan Cos., Inc.*, 298 Ark. 461, 768 S.W.2d 531 (1989).

■ We hold that there was sufficient evidence in this case to prove that appellant was served. Appellant did not appear and testify at the hearing on his motion, but the deputy who served him did, and he testified as follows:

---

[1] We dismissed Miller's first appeal pursuant to Ark. R. Civ. P. 54(b) because the claims against Diamond Lakes and North Malvern Marine remained pending. Miller returned to circuit court and obtained an order that complies with Rule 54(b).

Q.: Do you know a gentleman named Patrick Miller?

A.: Yes, I do.

Q.: I'm showing you from the Court file here a document that purports to be a summons to Patrick Miller. Could you tell me if you've seen this document before?

A.: Yes, I have.

Q.: Okay, and what were the circumstances?

A.: I served Mr. Patrick Miller a copy of this on the 22nd of June at 10:40 a.m. and I have signed it.

Q.: Okay, and do you recall doing this?

A.: Yes, sir, I do.

Q.: Okay, and was it just this one page or what was with this?

A.: It was a Restraining Order...

Q.: Was there a complaint with it?

A.: ... and a complaint. Yes, sir.

The deputy's testimony that he served the complaint and summons on Miller was unequivocal. Whether his testimony was believable was a matter for the trial judge to decide. The judge obviously found the deputy to be a credible witness, and we defer to his superior ability in that regard. *See Eagle Bank & Trust Co. v. Dixon*, 70 Ark. App. 146, 15 S.W.3d 695 (2000). Appellant attempts to reduce the impact of the deputy's testimony by pointing out that, on cross-examination, he stated that he had served appellant so many times that he could not identify each and every instance. That testimony does little to impeach the deputy's precise recollection of his service upon appellant in this instance.

Appellant also contends that the default judgment should have been set aside because appellee failed to serve him with Bryan Alsobrooks's affidavit. It is true that the affidavit was not served on

appellant, though it should have been, pursuant to Ark. R. Civ. P. 5(a).[2] However, appellant is unable to show how appellee's failure to serve him with this affidavit justifies relief from the operation of the default judgment. He points to nothing in Ark. R. Civ. P. 55 or Arkansas case law to the effect that failure of a plaintiff to serve any papers filed after the complaint requires a default judgment to be set aside. Additionally, there is nothing in the affidavit that could not have been gleaned from the complaint that was served on appellant on June 22. The affidavit, like the complaint, stated that Diamond Lakes was in default in the amount of $2,809,907.33, and both referred to the possibility that a deficiency judgment could exist upon the sale of collateral. Thus, appellant has not shown how appellee's failure to serve the affidavit on him affected the entry of the default judgment. We do not consider assignments of error that are unsupported by convincing authority or argument. *Edwards v. Stills*, 335 Ark. 470, 984 S.W.2d 366 (1998).

■ ■ The sufficiency of the Alsobrooks affidavit, as proof of damages, is also challenged by appellant. Generally, a default judgment establishes liability but not the extent of damages. *See Tharp v. Smith*, 326 Ark. 260, 930 S.W.2d 350 (1996). Thus, proof must be presented as to the amount of damages. *Id.* However, there is an exception to the proof requirement in a suit on an account where a verified statement of the account is filed with the complaint. *Id.*; Ark. Code Ann. § 16-45-104 (Repl. 1999). Here, appellee filed a statement listing the outstanding inventory items and an affidavit certifying the amount of the debt. In a suit on an account, the affidavit of the plaintiff, duly taken and certified, that the account is just and correct shall be sufficient to establish the account unless the defendant denies under oath the correctness of the account, in which case the plaintiff must prove the account by other evidence. *See* Ark. Code Ann. § 16-45-104 (Repl. 1999). Appellant did not deny the correctness of appellee's verification (although he did state in an affidavit that the judgment against him was "grossly inflated"); therefore, the verification was sufficient to support the default judgment award.

■ Appellant further complains that the affidavit was insufficient because it did not state the amount of a possible deficiency judgment. This is incorrect because the affidavit reflects an approximate $200,000 difference between the amount owed and the value

---

[2] Rule 5(a) provides that all papers filed subsequent to the complaint shall be served on each party. Although the rule does not require service on parties that are in default, appellant was not in default when the affidavit was filed on June 21.

of collateral. Appellant also points to the fact that, while substantial collateral existed that could reduce the total amount owed, judgment was entered against him for over $2,700,000. First, there is evidence that appellant's liability on the judgment will be reduced by the sale of collateral. Appellee's attorney assured the trial judge of this in open court. In fact, a partial satisfaction of judgment was entered on April 11, 2000, as the result of the sale of collateral, and the balance due was reduced to $1,039,163.63. Secondly, the guaranty agreement executed by appellant permits appellee to seek judgment against him for the full amount of the debt, irrespective of any attempts to realize on collateral.

 ██ Next, we address appellant's argument that he is entitled to the benefit of the automatic stay obtained by Diamond Lakes in its bankruptcy action. Diamond Lakes filed its petition for Chapter 11 bankruptcy (later converted to Chapter 7) on June 30, 1999. Thereafter, a stay was imposed, prohibiting creditors from the continuation of any judicial proceedings "against the debtor." *See* 11 U.S.C. § 362 (1994 and Supp. V 1999). Appellant claims that appellee should have obtained relief from the stay before obtaining a default judgment against him. However, appellant was not the debtor in the bankruptcy action, so the stay was not applicable to an action against him. We have held that an automatic stay in bankruptcy is not for the benefit of a guarantor. *See Aluminum Co. of America v. Higgins*, 5 Ark. App. 296, 635 S.W.2d 290 (1982); *Van Balen v. Peoples Bank & Trust Co.*, 3 Ark. App. 243, 626 S.W.2d 205 (1981).

 Appellant's next argument is that an answer filed by Diamond Lakes inured to his benefit. Diamond Lakes, despite its bankruptcy filing, remained a named defendant in the circuit court case. On September 16, 1999, the same day that appellant moved to set aside the default judgment, Diamond Lakes filed an answer denying the allegations in appellee's complaint. Appellant now hopes to take advantage of the common-defense doctrine, which provides that a timely answer filed by a co-defendant inures to the benefit of a defaulting co-defendant. *See Sutter v. Payne*, 337 Ark. 330, 989 S.W.2d 887 (1999).

 We hold that the common-defense doctrine is not applicable in this case because appellant did not show that his co-defendant's answer was timely. Diamond Lakes's answer was filed approximately eighty-six days after Diamond Lakes was served, making it untimely under our Rules of Civil Procedure, as the trial judge specifically found. The common defense doctrine applies

when a co-defendant files a *timely* answer. Although federal law provides bankruptcy trustees an extension of time to file pleadings on behalf of a debtor, *see* 11 U.S.C. § 108(b) (1994), we are unable to determine, given the record before us, if Diamond Lakes met the requirements of that statute. The issue was not developed below, nor does appellant raise the issue on appeal. Failure to make an argument on appeal constitutes a waiver of that argument. *Seay v. Wildlife Farms, Inc.*, 342 Ark. 503, 29 S.W.3d 711 (2000). Further, when an argument is not raised in the trial court, it is not considered on appeal. *Luedemann v. Wade*, 323 Ark. 161, 913 S.W.2d 773 (1996).

Finally, appellant argues that the default judgment should have been set aside on the grounds of inadvertence and excusable neglect. He claims that attorney David Goldman, who represented Diamond Lakes, represented him also, and that he relied on Goldman to protect his interests in the case. Goldman's failure to do so, he says, constituted excusable neglect. As proof of his contention, appellant refers to a bankruptcy court order, which mentions that Goldman had an unspecified conflict of interest in representing Diamond Lakes. Appellant cannot show how Goldman's conflict concerning Diamond Lakes prevented him from filing a timely answer on behalf of appellant. Appellant also refers to a comment made by the bankruptcy judge from the bench that Goldman was negligent in his representation of appellant. We do not consider that comment because it is not in the record before us. The only relevant matter that appellant has shown is the statement in his affidavit that he had been represented by Goldman since 1994. There is no showing that he actively sought Goldman's representation in this case, nor is there any showing of the circumstances surrounding the failure to file an answer. These factors distinguish this case from *Burns v. Shamrock Club*, 271. Ark. 572, 609 S.W.2d 55 (1980), upon which appellant relies. In light of this lack of proof, we cannot say that the trial judge abused his discretion in refusing to set aside the default judgment.

Affirmed.

STROUD, C.J., and JENNINGS, J., agree.