Cite as 2024 Ark. App. 359

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CV-22-348

| | |
|---|---|
| CODY S. TACKETT, INDIVIDUALLY; TTC, INC.; RED RIVER SAND AND GRAVEL, INC.; S.W.A.T., INC.; SYNERGY LOGISTICS, INC.; AND CST LOGISTICS, INC.<br><br>APPELLANTS<br><br>V.<br><br>MILLER-CLABORN OIL DISTRIBUTING CO., INC.; AMY FREEDMAN, SPECIAL ADMINISTRATRIX OF THE ESTATE OF JOHN Z. TACKETT, JR.; MELISSA WRIGHT TACKETT, INDIVIDUALLY; HWY 71 TRUCKING, LLC; AND JZT'S HWY 71 TRUCKING, LLC<br><br>APPELLEES | Opinion Delivered: May 29, 2024<br><br>APPEAL FROM THE LITTLE RIVER COUNTY CIRCUIT COURT [NO. 41CV-15-112]<br><br>HONORABLE CHARLES A. YEARGAN, JUDGE<br><br><br><br>AFFIRMED |

**MIKE MURPHY, Judge**

This appeal arises from a payment-on-account lawsuit filed by Miller-Claborn Oil Distributing Co., Inc. ("Miller-Claborn"), against John Tackett, Jr., in 2015. We note that there was a previous appeal in a related probate action. In the first probate appeal, *Tackett v. Freedman*, 2022 Ark. App. 135, 641 S.W.3d 683, we affirmed the circuit court's order that approved a settlement between Miller-Claborn and John's estate. Additional facts and history can be found in *Tackett v. Miller-Claborn*, 2024 Ark. App. 360, ___ S.W.3d ___, and *Tackett*

*v. Freedman*, 2024 Ark. App. 358, ___ S.W.3d ___, also handed down this date. Because there are facts that overlap all these appeals, we will reference the probate action that was filed in Sevier County as the "Probate Action" and the civil action that was filed in Little River County as the "Civil Action."

This appeal involves an order of contempt in the Civil Action against John's son, Cody, and a subsequent order granting discovery sanctions and striking all Cody's pleadings, along with those of the other appellants. This resulted in a default judgment against Cody and his business entities.

We affirm.

## I. *Factual and Procedural Background*

Before delving further into the facts, it is important to know that John died suddenly—and intestate—in 2019. He was survived by his spouse, Melissa Tackett, and two adult children, Cody Tackett and Toni Tackett Womble. *Tackett v. Freedman*, 2022 Ark. App. 135, at 1, 641 S.W.3d at 684. In both the Probate Action and the Civil Action, John is alleged to have started corporations, moved assets between them, and titled property in the names of those various business entities, his children, his wife, or third parties in an attempt to avoid creditors.

Before his death, John owned or operated a number of businesses related to the trucking industry. One of the primary businesses he allegedly operated was TTC, Inc. ("TTC"), through which John routinely purchased diesel fuel. On December 15, 2015,

Miller-Claborn sued John; Cody; Steve Womble;[1] TTC; Red River Sand and Gravel, Inc. ("Red River Sand"); S.W.A.T, Inc. ("SWAT"); and Synergy, Inc. ("Synergy"). At various points throughout the litigation, TTC, Red River Sand, SWAT, and Synergy were alleged to have been controlled by John and involved in his scheme to hide assets. The complaint, filed in Little River County, alleged breach of contract and claimed that John had agreed to pay for $552,564.49 in diesel fuel but had then used several business entities to hide assets and avoid paying this debt.

The operative complaint for the purpose of these appeals is the sixth amended complaint. Miller-Claborn filed its fifth amended complaint on February 28, 2020, alleging suit on open account, breach of contract under common law and the UCC, unjust enrichment, fraudulent inducement, violation of the Uniform Voidable Transactions Act, and conspiracy. By this point, Miller-Claborn had added CST Logistics, Inc. ("CST Logistics"), and had asserted that Cody and CST Logistics were involved in John's alleged scheme.

On January 24, 2020, which was after John's death, Miller-Claborn requested a temporary restraining order and preliminary injunction against Melissa to prevent her from selling some of John's assets. The circuit court granted a temporary restraining order to prevent any defendant from disposing of potential estate assets.

---

[1]Steve Womble was voluntarily dismissed on January 21, 2020, and does not make any other appearances in the civil suit.

A few days later, Eddy Johnson, Miller-Claborn's owner, petitioned the circuit court in Sevier County[2] to appoint a special administrator to John's estate so Miller-Claborn could file a claim as a creditor against the estate. The circuit court granted the petition that same day and appointed Amy Freedman as administratrix. This became the Probate Action.

On February 6, the circuit court in the Civil Action granted a preliminary injunction against any party possessing estate assets or any other assets "subject to the claims of [Miller-Claborn][.]" It prohibited those assets from being sold or otherwise disposed of. There were two exceptions: The preliminary injunction allowed certain personal property to be sold at auction and the proceeds deposited into the registry of the court. It also stated, "Nothing contained herein is intended to prevent the legitimate day-to-day operations of any entity named herein." This is the preliminary injunction at issue in this appeal.

Meanwhile, on July 8, TCC, SWAT, Red River Sand, Synergy, CST, and Cody filed counterclaims against Miller-Claborn for fraud and conspiracy. On the same day, Cody filed a cross-complaint against Melissa and Hwy 71 Trucking, LLC, for conversion. The counterclaim and cross-claims were eventually dismissed and are discussed in more detail in *Tackett v. Miller-Claborn*, 2024 Ark. App. 360, ___ S.W.3d ___.

On October 30, Cody sold a five-bay shop that he had used for the operations of CST Logistics, even though Miller-Claborn had alleged that Cody and CST Logistics were

---

[2]Although the Civil Action was filed in Little River County and the Probate Action was filed in Sevier County, Judge Yeargan presided over both matters at all times relevant to these appeals.

4

involved in John's scheme to defraud creditors. Miller-Claborn reacted by filing a motion for contempt against Cody on December 8.

On December 28, Cody filed his suggestion of bankruptcy in both the Civil Action and the Probate Action. Normally, the suggestion of bankruptcy would have resulted in a stay of the state court proceedings. However, in this case, the bankruptcy court lifted the stay with regard to Miller-Claborn's claims against Cody and his businesses. The bankruptcy court took that action so Miller-Claborn could liquidate its claim against Cody and then report the result back to the bankruptcy court, which would then integrate the liquidated claim into the bankruptcy plan if needed.

The circuit court held a hearing on Miller-Claborn's motion for contempt on April 27, 2021. During the hearing, Cody claimed he had sold the five-bay shop and used some of the proceeds to outfit and rent a one-bay shop that was owned by Toni. The circuit court requested documents showing the real estate closing, a copy of the lease of the one-bay shop, and an outline of what Cody used the sale proceeds for. Cody filed a response to that letter with the requested documents on May 3. In the letter transmitting the documents, Cody's attorney, Stephen Arnold, represented that Cody had used the sales proceeds to outfit the one-bay shop, pay attorneys' fees, make a house payment, and give a $2,800 birthday and Christmas gift to his three-year-old son.

On June 21, the circuit court granted Miller-Claborn's motion for contempt. In that order, the circuit court held that Cody had violated the temporary injunction by selling the shop and ordered him to pay $45,218.24 from the transaction to the registry of the court

and to pay $4,500 for attorneys' fees to Miller-Claborn. The contempt order also reopened discovery for the purpose of deposing Cody and ordered Cody to produce monthly accountings for him and his business entities. The validity of this order of contempt is one issue on appeal.

After the circuit court entered the order of contempt, Miller-Claborn sent Arnold four letters dated July 27, August 17, September 10, and September 24 in an attempt to schedule Cody's deposition. Those letters also requested the monthly accountings that Cody was ordered to produce but never did. Neither Arnold nor Cody responded to the letters. Miller-Claborn next sent a notice of deposition and a subpoena duces tecum to Arnold. The subpoena deuces tecum requested multiple financial records, including the accountings that the circuit court had ordered Cody to produce. During the hearing on this matter, Miller-Claborn's counsel represented to the circuit court that Arnold had come to his office after receiving the notice of deposition and "advised us that he did not intend to produce the documents that we subpoenaed, and he did not intend to appear for the deposition." Indeed, Cody did not show up for the deposition on October 20 nor did he produce any of the requested documents. On October 22, Miller-Claborn moved for discovery sanctions.

At some point during the pendency of the Civil Action, Cody moved for summary judgment regarding Miller-Claborn's claims in bankruptcy court, despite the fact that the stay had been lifted in state court to litigate those very claims. During a hearing on October 25, 2021, just five days after Cody had failed to show up for his noticed deposition, the bankruptcy court asked about Arnold's motives for asking for a ruling on the motion for

summary judgment, considering the bankruptcy court had specifically ordered Miller-Claborn's claims to be litigated in state court. At the end of the exchange, the bankruptcy court stated it believed that Arnold was attempting to circumvent the order lifting the automatic stay. In response, Arnold stated, "[W]e're trying to get this case finished. . . . [T]he Little River County court wants to reopen discovery, start taking new depositions. I mean, that just seemed over the top."

Cody followed the hearing by moving for contempt against Miller-Claborn in the bankruptcy court on November 21, asking the bankruptcy court to sanction Miller-Claborn for filing its motion for sanctions in state court. That motion was denied after a hearing in which the bankruptcy court again chided Arnold for attempting to circumvent the order lifting the stay.

On January 18, 2022, in Little River County, the circuit court held a hearing on the motion for discovery sanctions. During that hearing, Miller-Claborn's attorney represented to the circuit court that Cody had finally agreed to a deposition, but it had to be reset due to a COVID-19 outbreak in the office. However, it was only after the order of contempt, the multiple letters, the deposition notice and subpoena duces tecum, a motion for sanctions, and being told by the bankruptcy court multiple times that his behavior was unacceptable that Arnold finally agreed to discuss setting a deposition for his client.

After the hearing, on January 26, the circuit court granted Miller-Claborn's request for discovery sanctions. The circuit court struck every pleading and document filed by Cody and "his related business entities." As a result, the circuit court entered a default judgment

7

against Cody and his related entities for the total damages claimed for suit on account plus prejudgment interest. The damages award was based on the affidavit and invoices attached to Miller-Claborn's fifth amended complaint. This order and entry of judgment is the second order involved in this appeal.

Cody moved to set aside the judgment on February 9, which was deemed denied after the circuit court did not rule on it. This deemed denial is the third issue involved in this appeal.

II. *Issues on Appeal*

A. The Contempt Order

Cody first urges us to reverse the circuit court's order finding him in contempt for violating the preliminary injunction. Because Cody's appeal of that order was not timely filed, we cannot reach the merits of his argument and must affirm.

An order that imposes a sanction and constitutes the final disposition of a contempt matter is immediately appealable as an interlocutory order under Arkansas Rule of Appellate Procedure–Civil 2(a)(13).

The supreme court analyzed the procedure for appealing interlocutory orders in *In re Est. of Stinnett*, 2011 Ark. 278, 383 S.W.3d 357. In *Stinnett*, the supreme court held that interlocutory orders that are reviewable under Rule 2(a) must be appealed within thirty days of entry. *Id.* at 7, 383 S.W.3d at 361. If the appellant fails to appeal within thirty days, then the interlocutory order is not later reviewable under Rule 2(b). *Id.* at 8, 383 S.W.3d at 361.

The circuit court in this case entered the contempt order on June 21, 2021. The order found Cody in contempt of the preliminary injunction, and it imposed a sanction. It did not contemplate continuing judicial action, so the order is a final disposition of the contempt matter. *See Potter v. Holmes*, 2020 Ark. App. 391, at 5–6, 609 S.W.3d 422, 427 (contempt order appealable); *Heileman v. Cahoon*, 2024 Ark. App. 72, at 11, 685 S.W.3d 256, 262–63 (contempt order not appealable). Because Cody did not appeal the contempt order within thirty days as required by Arkansas Rule of Appellate Procedure–Civil 4, we cannot review the order.

The contempt order is affirmed.

## B. Discovery Sanctions and Entry of Judgment

Appellants next appeal the circuit court's order granting discovery sanctions to Miller-Claborn and striking all the appellants' pleadings and other filings. The circuit court also granted a default judgment to Miller-Claborn in the full amount sought in its complaint—$552,564.49 plus prejudgment interest in the amount of $198,923.19.

### 1. *Discovery sanctions*

Discovery sanctions are governed by Rule 37 of the Arkansas Rules of Civil Procedure. That rule states that if a party "fails to obey an order to provide or permit discovery" then the circuit court

> may make such orders in regard to the failure as are just, and among others the following: . . . (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party[.]

9

Ark. R. Civ. P. 37(b)(2)(C).

Earlier this year, we decided a case in which the appellant's answer was struck and a default judgment entered as a discovery sanction. We review

> the imposition of discovery sanctions for an abuse of discretion, and our court has noted that the bar to demonstrate that the circuit court has abused its discretion in an order under Rule 37 is very high. The circuit court is in a superior position to judge the actions and motives of the litigants, and the circuit court's rulings should not be second-guessed. Our appellate courts have repeatedly upheld the circuit court's exercise of discretion in fashioning severe sanctions for flagrant discovery violations. A circuit court commits an abuse of discretion when it improvidently exercises its discretion, as when it is exercised thoughtlessly and without due consideration.

*Johnson Indus. Maint. Co. v. Borkowski*, 2024 Ark. App. 146, at 7–8, 686 S.W.3d 825, 830 (citing *S.A.M. Grp., LLC v. CR Crawford Constr., LLC*, 2020 Ark. App. 173, at 2–3, 596 S.W.3d 590, 591; *Russellville Holdings, LLC v. Peters*, 2017 Ark. App. 561, at 13, 533 S.W.3d 119, 127; *Coulson Oil Co. v. Tully*, 84 Ark. App. 241, 251–52, 139 S.W.3d 158, 164 (2003); *Merica v. S&S Home Improvements, Inc.*, 2021 Ark. App. 197, at 5–6, 625 S.W.3d 356, 359).

In other words, even though striking a party's answer and entering a default judgment are severe sanctions, they are permissible sanctions as long as the circuit court did not abuse its discretion. Further, there is no requirement that the circuit court make a finding of willful or deliberate disregard in order to impose this sanction. *Johnson*, 2024 Ark. App. 146, at 7, 686 S.W.3d at 830 (quoting *Calandro v. Parkerson*, 333 Ark. 603, 608, 970 S.W.2d 796, 799 (1998)). Circuit courts have the power to impose discovery sanctions, even harsh ones, because "it is crucial to the judicial system that the trial courts retain the discretion to control

10

their dockets and imposition of discovery sanctions is one method to facilitate that function." *S.A.M. Grp., LLC*, 2020 Ark. App. 173, at 4, 596 S.W.3d at 592.

Before it imposed sanctions, the circuit court entered the contempt order, which permitted discovery. The contempt order detailed exactly how Cody had violated the preliminary injunction and then mandated that Cody disgorge the proceeds from the sale of the real property, pay Miller-Claborn's attorneys' fees, produce monthly accountings, and "be made available for additional depositions." The order was clear and unambiguous, and it mandated that Cody permit and provide discovery.

There is no dispute that Cody did not permit and provide discovery. The contempt order required that Cody provide monthly accountings. Cody and his counsel repeatedly ignored Miller-Claborn's attempts to obtain the accountings. Although some documents were produced days before the sanctions hearing, the circuit court held that "this refusal to participate in discovery by producing the Court ordered production in a timely manner represents a continued pattern of delay on behalf of Cody Tackett which has continued to frustrate this Court's docket and has prejudiced the Plaintiff."

Cody's refusal to sit for a deposition in defiance of the circuit court's order was even more egregious. Miller-Claborn's attorneys contacted Arnold four times through e-mail and letters attempting to schedule Cody's deposition that the circuit court had specifically ordered. When Arnold ignored that communication, Miller-Claborn noticed the deposition. Cody did not seek a protective order, seek an order to quash, or appear at that deposition.

11

Instead of taking any action in the Little River County Circuit Court to prevent the deposition, five days after the deposition was supposed to have taken place, Arnold appeared at a hearing on Cody's bankruptcy matter and attempted to obtain a ruling on a motion for summary judgment that would resolve Miller-Claborn's claims against Cody. After some questioning, the bankruptcy court stated its belief that Cody was attempting to "circumvent the previous order of [the bankruptcy court], which was to lift the stay and allow that matter to be litigated [in Little River County]." In response, Arnold stated that he wanted the bankruptcy court to decide the issue between the parties because Judge Yeargan's contempt order "just seemed over the top." In other words, Cody and Arnold were attempting to forum shop and litigate Miller-Claborn's claims in the bankruptcy court—which had already declined to hear the claims—to avoid complying with the contempt order.

A contempt order that imposes a sanction and constitutes the final disposition on a contempt matter is subject to interlocutory appeal. Ark. R. App. P.–Civ. 2(a)(13). That was the proper avenue for Cody to challenge a contempt order he believed was "over the top." Even after being told he was "circumventing" the bankruptcy proceedings, Arnold proceeded to move for contempt in the bankruptcy court against Miller-Claborn. The bankruptcy court once again told Arnold his use of the bankruptcy proceeding was improper and that he would also have the power to sanction flagrant discovery violations. It was not until after all this that Cody and Arnold began discussing potential dates for the deposition that the circuit court had ordered months previously.

Refusal to comply with discovery explicitly ordered by the circuit court would be grounds for discovery sanctions. Attempting to litigate the issue in a completely different forum because of a belief that the contempt order was "over the top" is flagrant. The circuit court did not improvidently exercise its discretion, and the imposition of sanctions was not exercised thoughtlessly and without due consideration. For this reason, we affirm the circuit court's order striking Cody's pleadings and entering default judgment.

## 2. *Damages*

Appellants' arguments regarding damages can be summarized as follows: (1) the circuit court should have held a hearing as to damages, and (2) Miller-Claborn's verified statement of account was insufficient. We will address each argument in turn.

It is true that Rule 55(b) requires a hearing regarding damages when a default judgment has been entered, in certain circumstances. However, we have noted that "the supreme court expressly held that 'Rule 55 requirements do not apply to Rule 37 sanctions.'" *Johnson*, 2024 Ark. App. 146, at 10, 686 S.W.3d at 831 (quoting *Nat'l Front Page, LLC v. State ex rel. Pryor*, 350 Ark. 286, 290, 86 S.W.3d 848, 850 (2002)). In fact, in *Johnson*, we refused to consider the appellant's arguments regarding whether a hearing was required because all the appellant's citations were to cases interpreting Rule 55. The same is true here. We hold that the circuit court did not err when it chose not to hold a hearing on damages.

We now turn to whether the circuit court erred in the amount of damages it awarded. The requirements for a verified suit on account are listed in Arkansas Code Annotated section 16-45-104(b). Those requirements are:

(1) The name of:

    (A) The creditor to whom the account is owed;

    (B) The creditor pursuing collection of the account; and

    (C) The debtor obligated to pay the account;

(2)(A) A statement or disclosure of whether or not the debtor's account has been assigned or is held by the original creditor.

. . . .

(3) A statement of the affiant's authority to execute the affidavit on behalf of the creditor, including the affiant's job title or relationship to the creditor;

(4) A statement that the affiant is familiar with the books and records of the creditor and the account;

(5) A statement that the information and amount stated in the affidavit is true and correct to the best of affiant's knowledge, information, and belief;

(6) The interest rate and the source of the interest rate; and

(7) The total amount due, including interest, at the time the affidavit is executed.

Ark. Code Ann. § 16-45-104(b) (Supp. 2023).

Miller-Claborn brought a claim for suit on account. The complaint incorporated exhibits, including a verified statement of account. Appellants agree in their briefing that the invoices attached in exhibit A to the complaint add up to $`552,564.49. The invoices are verified in an affidavit attached to the complaint as exhibit B.

As to the elements of the statute, the invoices contain the name of the creditor and the debtor. The affidavit states that the affiant is the owner and authorized representative of the creditor. It states that the invoices and figures are true and correct to the best of the

14

affiant's knowledge. The statutory elements that are missing are (1) an explicit statement that the account is still owned by the original creditor, (2) an explicit statement that the affiant is familiar with Miller-Claborn's books and accounts, (3) the interest rate, and (4) the amount including interest as of the time of signing. Instead, the affidavit included the principal amount that was due.

Appellants argue that the verified statement of account does not comply with the statute and is, therefore, invalid. However, we affirmed a default judgment based on a verified statement on account in *Miller v. Transamerica Commercial Finance Corp.*, 74 Ark. App. 237, 47 S.W.3d 288 (2001). While that opinion does not set out the contents of the statement word for word, it does hold that "appellee filed a statement listing the outstanding inventory items and an affidavit certifying the amount of the debt." *Miller*, 74 Ark. App. at 242, 47 S.W.3d at 292. The invoices and affidavit in this case contain this information.

Similarly, in *Smith v. Chicot-Lipe Insurance Agency*, 11 Ark. App. 49, 51, 665 S.W.2d 907, 908 (1984), we held that a verified complaint complied with the statute when it "set forth appellant's account and the payment due." These cases make clear that strict compliance with the statute is not required in order for a verified statement on account to be valid as evidence of damages. The elements not present in the affidavit in this case are minor. For example, the president and owner of the creditor is (or should be) familiar with its books. Miller-Claborn brought the lawsuit, so it is also clear that the account had not been transferred to another creditor. It is evident from the complaint to which they are attached exactly what damages Miller-Claborn is seeking for the suit on account. Miller-

Claborn substantially complied with the statute, and its exhibit A and exhibit B are sufficient to serve as a verified statement of account.

Further, if a defendant does not deny a verified statement of account under oath, then the statement is considered correct, and it is proper for a court to enter judgment in that amount. *Miller*, 74 Ark. App. 237, 47 S.W.3d 288; *Clarke v. John Wanamaker, N. Y.*, 184 Ark. 73, 40 S.W.2d 784 (1931). Cody's verified answer in which he denied the statement on account was struck. The remaining denials cited by appellants were not under oath.

For these reasons, the verified statement of account was sufficient, and it was not an abuse of discretion for the circuit court to rely on it to assign damages for the default judgment.

For these reasons, we affirm the circuit court's order and entry of judgment.

C.  Denial of Motion to Alter or Amend

Appellants' third point on appeal is that the circuit court improperly denied their motion to alter or amend. The motion granting discovery sanctions and awarding a default judgment was entered on January 26, 2022. On February 9, the appellants moved to set aside judgment as to certification, damages, and liability. Under Rule 4 of the Arkansas Rules of Appellate Procedure–Civil, this motion was deemed denied because the circuit court did not rule on it.

In support of this point on appeal, Cody simply restates his arguments from other sections of his brief. As thoroughly discussed above, all those arguments fail.

For these reasons, we affirm the circuit court's orders.

Affirmed.

HARRISON, C.J., and KLAPPENBACH, J., agree.

*Arnold & Arnold*, by: *Stephen T. Arnold*; and *Robert S. Tschiemer*, for appellants.

*Norton & Wood*, by: *Marshall C. Wood* and *Richard J. Kroll*, for separate appellee Miller-Claborn Oil Distributing Co., Inc.